NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1138

ASPEX EYEWEAR, INC., MANHATTAN DESIGN STUDIO, INC.,
CONTOUR OPTIK, INC., and ASAHI OPTICAL CO., LTD.,

Plaintiffs- Appellants,

v.

MIRACLE OPTICS, INC. and VIVA OPTIQUE, INC.,

Defendants-Appellees.

_____

DECIDED: March 2, 2006

_____

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

ARCHER, Senior Circuit Judge.

Aspex Eyewear, Inc., Manhattan Design Studio, Inc., Contour Optik, Inc., and Asahi Optical Co., Ltd. (collectively "Aspex") appeal the judgment of the United States District Court for the Central District of California holding that Miracle Optics, Inc.'s ("Miracle") Magic Clip products do not infringe U.S. Patent RE37,545 ("the '545 patent"). Aspex Eyewear, Inc. v. Miracle Optics, Inc., No. CV 01-10396 (C.D. Cal. Aug. 8, 2003) ("Summary Judgment Order"). Because the district court erred in its claim construction, we vacate and remand.

I

The '545 patent is drawn to eyeglasses that have a primary spectacle frame and an auxiliary spectacle frame attached thereto by magnetic members. The primary spectacle frame typically includes prescription lenses while the auxiliary frame typically includes sunglass lenses. Claims 12, 16, and 24 are at issue in this case and recite as follows:

12. An eyeglass device comprising:
a primary spectacle frame having two side portion extensions, each of said extensions having a front side, a rear side and a first magnetic member secured to said rear side, an auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending toward and beyond said rear side, each of said arms containing a second magnetic member, and
said arms and said first and second magnetic members cooperating to stably support said auxiliary spectacle frame on said primary spectacle frame.

16. An eyeglass device comprising:
a primary spectacle frame having two side portion extensions, each of said extensions having a front side and a rear side with a first magnetic member secured to said rear side, and
an auxiliary spectacle frame including two side portions, each of said side portions having an arm extended therefrom for extending beyond said rear side, said arms containing corresponding second magnetic members, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

24. An eyeglass device comprising:
an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed end for securing a magnetic member, a pair of magnetic members respectively located at said ends of said arms, each of said ends further including a downwardly extended end portion for hooking onto a primary spectacle, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can engage corresponding magnetic members on a primary spectacle frame.

'545 pat, col. 4, l. 63 – col. 7, l. 20 (emphases added). The claim limitations relevant to this appeal are drawn to arms extending from the auxiliary frame: "an arm extended therefrom for extending toward and beyond said rear side" (claim 12); "an arm extended therefrom for extending beyond said rear side" (claim 16); and "arms having a rearwardly directed end for securing a magnetic member" (claim 24). The district court construed these limitations to "require that the arms of the auxiliary frames do not extend past the rear edge of the projection of the primary frame containing or securing the magnetic member." Summary Judgment Order, slip op. at 30. Because Miracle's Magic Clip products have an auxiliary frame with arms that extend beyond the projection containing the magnetic member, the court ruled that the "accused product does not read on the claimed invention," id. at 34, and therefore did not literally infringe the '545 patent, id. at 36. The court also determined that prosecution history estoppel barred the applicability of the doctrine of equivalents. Id. at 38. Accordingly, the district court granted Miracle's motions for partial summary judgment of no literal infringement and of no infringement under the doctrine of equivalents.

Aspex appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

Claim construction is a question of law which we review de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). In determining the meaning of disputed claim terms, a court must look primarily to the intrinsic evidence of record, examining the claim language itself, the specification, and the prosecution history, if in evidence. See Phillips v. AWH Corp., 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (en banc).

04-1138                                    3

It is undisputed that claims 12, 16, and 24 do not expressly contain a limitation that the auxiliary frame arms cannot extend past the rear edge of the projection of the primary frame containing or securing the magnetic member. The written description, too, is silent as to such a limitation. Thus, at issue here is whether the prosecution history mandates that the claim language be construed to require that the arms extending from the auxiliary frame cannot extend beyond the rear edge of the projection of the primary frame, as the district court held.

During reissue proceedings, additions to the specification were proposed, including an additional drawing, Figure 8, and new claims were proposed. The examiner disapproved the proposed drawing because it introduced new matter into the drawings. Specifically, the examiner stated "[t]he original disclosure does not support the showing of the end portion, but not the magnetic member 22, of the arm extends [sic] downward toward the projection for hook [sic] on the primary spectacle frame as shown in the newly added Fig. 8." The examiner also rejected the proposed new claims that were directed to the subject matter of Figure 8, because, inter alia, "[t]he original specification fails to disclose the subject matter of the end portion of the arm of the auxiliary spectacle frame extended downward toward the projection for hooking on the primary spectacle frame as claimed in claims 25-33 . . . ." The applicant responded to these rejections by pointing to the following excerpt from the original specification, arguing this excerpt provided the support for the new claims and drawings:

> Applicant respectfully disagrees. Lines 4-7, column 3 of the original specification states: "[t]he end portions of the arms 21 . . . are slightly extended downward toward the projections 13 such that the arms 21 . . . may hook on the primary spectacle frame 10." Thus, the original specification provides support for the subject matter of the end portion of

the arm of the auxiliary frame extended downward toward the projection for hooking on the primary spectacle frame.

Following an interview with the applicant, the examiner indicated that the new matter rejection with respect to the claims was overcome. With respect to proposed Figure 8, the examiner "clarified his objection by stating that he was not objecting to a downwardly extending end portion per se, but to the fact that the end portion extends laterally past the rear edge of the projection." The applicant, however, continued to maintain that Figure 8 did not represent new matter and expressed this position in his next filing:

> Applicant is of the opinion that the original specification supports new Figure 8 for at least the following reason. The disclosure at column 3 expressly states that the end portion of the arm extends downward towards the projection. In addition, the original specification expressly discloses that the end portion may hook onto the spectacle frame. The original Chao '207 patent [the '545 patent prior to reissue] also expressly discloses that the projection is part of the spectacle frame, to wit, "the primary spectacle frame including two rear and side portions each having a projection secured thereto." Since the original patent expressly states that the end portion of the arm can hook to the frame, this disclosure conveys to the skilled practitioner that the end portion can hook onto the frame, e.g., via the "extension 11" which is part of the frame, or to "the end of the projection" which is also part of the frame, to help retain the auxiliary frame on the primary frame."

Additionally, the applicant noted that in view of the examiner's statements during the interview Figure 8 was no longer necessary:

> In any event, during the interview, the Examiner indicated that claims directed to the feature, "the end portion of the arm of the auxiliary spectacle frame extended downward towards the projection for hooking on the primary spectacle frame" are supported by the original disclosure, and would not require a separate drawing figure to show this feature. Thus the Examiner expressly waived the requirements of 37 C.F.R. § 1.83[1] with

---

[1] 37 C.F.R. § 1.83(a) states "The drawing in a nonprovisional application must show every feature of the invention specified in the claims." 37 C.F.R. § 1.83(a) (1996).

respect to this feature. Accordingly, Figure 8 and its corresponding description in the specification have been deleted.

Id. The application was subsequently issued with no further mention of Figure 8, other than the examiner's statement "[t]he cancellation of the newly added Fig. 8 is acknowledged." Koo Decl., Ex. E 0531.

The district court concluded that this prosecution history imposed the limitation on the claimed invention that the auxiliary frame arms could not extend past the rear edge of the primary frame projections. Specifically, the court stated

> Based on the [prosecution history regarding Figure 8], it is clear that the applicant, in canceling Figure 8, never overcame the Examiner's objection with regard to the end portion extending beyond the rear edge of the projection of the primary frame. Instead, the applicant accepted that limitation with the understanding that the arm could extend downward – but still not past the rear edge of the projection of the primary spectacle frame.

Aspex Eyewear, Inc. v. Miracle Optics, CV 01-10396, slip op. at 29 (C.D. Cal. Feb. 18, 2003) ("Claim Construction Order"). Thus, the district court's claim construction required the arms extending back from the auxiliary spectacle frame not extend past the rear edge of the projections containing the magnetic members of the primary frame.

We disagree with the district court's reading of the prosecution history. There is no suggestion that the applicant simply "accepted" the examiner's position that the arms from the auxiliary frame could not extend past the rear edge of the projection of the primary spectacle frame. In fact, following an interview with the examiner the applicant specifically stated that he was "of the opinion that the original specification supports new Figure 8." As the prosecution history cited above reflects, the applicant's reason for ultimately canceling Figure 8 was because the examiner indicated during the interview that he would waive the requirements of 37 C.F.R. § 1.83 with respect to the feature

"the end portion of the arm of the auxiliary frame extended downward towards the projection for hooking on the primary spectacle frame." In other words, the applicant took the position that Figure 8 was no longer necessary; he did not, contrary to the district court's conclusion, concede that the subject matter of Figure 8 was unpatentable.

In view of the applicant's statements, we cannot say that the canceling of Figure 8 was a clear and deliberate disclaimer of the claim coverage suggested by Figure 8. See SuperGuide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 875 (Fed. Cir. 2004) ("To be given effect, such a [prosecution history] disclaimer must be made with 'reasonable clarity and deliberateness.'") (quoting N. Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1294 (Fed. Cir. 2000)). Further evidence that the subject matter of Figure 8 was not disclaimed by the applicant is seen by his continued prosecution of claims directed to the depicted embodiment. In fact, the examiner allowed claims that are broad enough to encompass the canceled Figure 8; namely, claims 12, 16, and 24.

Additionally, the district court read the prosecution history as suggesting that the subject matter represented in Figure 8 was new matter and therefore not eligible for claim coverage. This interpretation is belied by the prosecution history of claims drawn to such subject matter. As noted above, during the prosecution of the '545 patent, claims were added which described the structure depicted in Figure 8. The examiner initially rejected these claims as introducing new matter. However, later in the prosecution history, the examiner withdrew the new matter rejection, and at least one claim drawn to the embodiment of Figure 8 issued in the '545 patent.

Specifically, new claim 28 recited

> An eyeglass device as recited in Claim 12 wherein at least the end portion of one auxiliary side portion extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

Koo Decl., Ex. E 0126. This claim was rejected under 35 U.S.C. § 112, ¶1 as containing new matter. The examiner stated that "[t]he original specification fails to disclose the subject matter of the end portion of the arm of the auxiliary spectacle frame extended downward toward the projection for hooking on the primary spectacle frame as claimed in claims 25-33. . . ," almost his verbatim objection to Figure 8, supra at 4. However, this rejection was subsequently withdrawn. See Examiner's Interview Summary ("[T]he new matter as discussed in the office action [including that referring to claim 28] will be withdrawn.") This indicates the examiner concluded that claim language directed to the embodiment of Figure 8 was not, in fact, new matter. Indeed, as noted above, at least one claim covering such an embodiment subsequently issued. [2] This contradicts the district court's determination that "the applicant, in canceling Figure 8, never overcame the Examiner's objection with regard to the end portion extending beyond the rear edge of the projection of the primary frame." Claim Construction Order, slip op. at 26.

Summarizing, because 1) the applicant's position that the original specification supported Figure 8; 2) the examiner's only objection to Figure 8 was that it was based on new matter; 3) the examiner subsequently viewed the subject matter of Figure 8 to be not "new"; and 4) the examiner allowed claims that are broad enough to encompass

---

[2] Claim 28 ultimately issued as claim 5 in the '545 patent.

Figure 8, we cannot conclude that the applicant disclaimed the subject matter of Figure 8. Accordingly, the district court erred in its construction of claims 12, 16, and 24 by imposing a limitation on the claims that the arms extending back from the auxiliary spectacle frame cannot extend past the rear edge of the projection containing the magnetic members of the primary frame.

The district court's literal infringement determination was that "[the d]efendant's accused product does not read on the claimed invention because the arm of the auxiliary frame extends beyond the projection containing the magnetic member." Summary Judgment Order, slip op. at 34. The district court also found infringement under the doctrine of equivalents unavailable to Aspex, because of "the applicant's deletion of Figure 8 from the '545 patent to obtain allowance on the claims. . . ." Id. at 38. These determinations are erroneous, and, therefore, we vacate the district court's grant of partial summary judgment of no literal infringement of the '545 patent and its grant of partial summary judgment of no infringement under the doctrine of equivalents. The case is remanded for further proceedings consistent with this opinion.